### EDNA BRASS MFG. CO. v. WILTBONCO MFG. CO.

(District Court, D. Massachusetts. August 1, 1923.)

No. 1411.

Patents ⬤⟃328—1,036,289, for improvement in water gages, held invalid, and, if valid, not infringed.

> The Mauger patent, No. 1,036,289, for improvement in water gages, consisting chiefly of yoke or hook for holding parts of gage together and operating in the same way such hooks had been used in other connections. *held* void for lack of invention, and, if valid, limited to mechanical details shown therein, and not infringed.

In Equity. Suit by the Edna Brass Manufacturing Company against the Wiltbonco Manufacturing Company. Bill dismissed.

Horace Van Everen and Van Everen, Fish, Hildreth & Cary, all of Boston, Mass., and William R. Wood, of Cincinnati, Ohio (Wood & Wood, of Cincinnati, Ohio, of counsel), for plaintiff.

Laurence A. Janney and Emery, Booth, Janney & Varney, all of Chicago, Ill., for defendant.

LOWELL, District Judge. This is a bill in equity to restrain the infringement of letters patent No. 1,036,289, granted to R. A. Mauger on August 20, 1912, now owned by the plaintiff. They related to an improvement in water gages, which consisted chiefly of a single removable yoke or hook for holding the two parts of a gage together. The defendant's gage did not have a single removable hook, and can be considered an infringement of the Mauger patent only by giving that patent a liberal construction.

The patent in suit shows an improvement in the manner of holding together the two members of water gages used with steam boilers, chiefly in the boilers of locomotive engines. Such a gage is set perpendicularly on a pipe connected with the boiler; by a glance at it the engineer can tell the height of the water in the boiler. The gage consists of a back frame forming part of the pipe, with an opening to allow the water to be seen, and a front frame with a similar opening. Between the two frames a piece of glass is set, with gaskets to allow it to seat itself snugly.

---

The pioneer patent in the art was that granted to Klinger in 1892, which related to a method of ribbing the glass, so that the water could be seen more easily on account of the refraction of light. The manner of attaching the two frames together was only incidental to the invention. It was done by means of ten or a dozen screws connecting the flanges of the frames. This manner of attachment was found to be inconvenient, as it required the taking out of a great many screws when the glass had to be removed, which was frequently the case owing to its wearing out or being broken. There was evidence also that the rigid attachment of the frames together at so many different points did not allow sufficient play for the expansion of the glass under the heat of the steam, thereby causing breakage. Many attempts were made to provide a connection such that the gage could more easily be taken apart, and several patents were granted for improvements in the means of connection. Mauger conceived the idea of using a single removable hook in the shape of a wishbone with a lug on each arm to grasp the edges of the front frame and hold the two parts of the gage in place. At the base of the hook there was a set screw which engaged with the back frame; by turning this screw the two parts of the gage could be drawn tightly together. The hook was placed in the middle of the back frame midway of its length. The claims of the patent all refer to a single hook. Mauger thus provided a gage which could be disassembled very easily. The plaintiff contends that Mauger's invention also solved the problem of allowing for the expansion of the glass.

Mauger's conception was a happy thought, but I am of the opinion that it did not rise to the dignity of an invention. Hooks such as he used had been known for many years. The plaintiff indeed does not deny the fact that if all that Mauger accomplished was to make it easier to disassemble the gage the patent would not be entitled to much consideration. The plaintiff insists, however, that by a stroke of genius Mauger discovered a means, long sought for and never before found, of allowing for the expansion of the glass. This was brought about by the fact that under the influence of pressure the hook would rock and allow the glass to reseat itself on the gaskets. This action of the hook was referred to in the testimony as "floating." But this character of such a yoke had been known for years. The plaintiff's expert stated on cross-examination:

"Q. In what way does the yoke as disclosed in the Mauger patent float differently from the separate yokes generally as they are used in the multitude situations in the various arts? Is it more or less floating? Is the floating different in character? A. No, I think the floating is the same. Wherever you mount a wishbone type of yoke, where it has a three-point contact, I think the floating would be the same, providing. of course, that the thing which was clamped together was—let me just express it as a living organization that has certain peculiar internal movements to induce the yoke rocking."

"Q. And when, as you said on plaintiff's opening case, the long used and known yoke was applied to the identical old Klinger gage construction, in order to represent what Mauger is said to have contributed. that yoke there had the characteristic capacity for rocking? A. That is correct. It had the capacity which the screws did not have.

"Q. And the capacity to rock was due to the characteristic yoke construction used in a similar situation? A. That is right."

In my opinion the Mauger patent is void for lack of invention. But if the patent shows sufficient novelty to be upheld, it should be limited to the mechanical details shown therein, and is not infringed by the defendant's gage, in which the mechanism is quite different.

Let a decree dismissing the bill be entered.